IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Clarence Williams, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 6:10-cv-2844-TMC-JDA |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Ashley Wright, Detective, Greer City ) | |
| Police Department, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on Defendant's motion for summary judgment. [Doc. 56.] Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

Plaintiff filed this action on November 2, 2010,[1] generally alleging claims of false imprisonment and false statement. [Doc. 1 at 2.] Plaintiff claims Defendant lacked probable cause to arrest Plaintiff [Doc. 43 at 1[2]] , and after his arrest, he lost his job and

---

[1] At the time he filed his Complaint, and as of the date of this Report and Recommendation, Plaintiff was incarcerated on charges unrelated to this action. Incarcerated Inmate Search, South Carolina Department of Corrections, https://sword.doc.state.sc.us/scdc-public/ (last visited Nov. 1, 2011) (listing Plaintiff's offense as strong arm robbery).

[2] The Court construed Docket Entry 43, captioned "Amendment; (Claim)," and a portion of Docket Entry 50 as motions to amend the Complaint. The Court requested Plaintiff to submit an amended complaint containing the requested amendments [Docs. 45, 64], but Plaintiff failed to submit an amended complaint. However, in an abundance of caution, the Court will consider the requested amendments with the Complaint as if Plaintiff had submitted an amended complaint.
    The Court notes the amendment requested in Docket Entry 50 is a demand for a jury trial; the request contains no additional factual allegations or claims.

his family was taken from him [Doc. 1 at 4].  Plaintiff seeks damages in the amount of $2.5 million.

On June 27, 2011, Defendant filed a motion for summary judgment.  [Doc. 56.]  On June 28, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised on the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  [Doc. 60.]  On July 28, 2011, Plaintiff filed a response in opposition to Defendant's motion for summary judgment.[3]  [Docs. 85, 85-1.]  Accordingly, Defendant's motion is now ripe for review.

## BACKGROUND

On May 16, 2010, Plaintiff was arrested and charged with two counts of unlawful neglect of a child and one count of third degree criminal sexual conduct.  [Doc. 1 at 4; Docs. 56-11, 56-12, 56-13.]  The charges stemmed from accusations made by Plaintiff's son in February 2010 and interviews with three of Plaintiff's other children in March 2010.[4]  [Doc. 1 at 4; Docs. 56-6, 56-7, 56-8, 56-9, 56-10.]  As to the criminal sexual conduct charge, Plaintiff's son went to the Greer City Police Department on February 8, 2010 and stated Plaintiff had molested him over a period of years; the most recent incident had occurred a few days before Plaintiff's son went to the police department.  [Doc. 56-7; Doc.

---

[3] Plaintiff's response in opposition contains some language that would indicate Plaintiff also intended his response to function as his own motion for summary judgment.  [*See, e.g.*, Doc. 85-1 at 1–2.]  However, Plaintiff clearly labeled his response documents "'Response To' Summary Judgment" and "'Memorandum in' Support of Plaintiff's Response to Summary Judgment" [Doc. 85; Doc. 85-1 at 1], and Plaintiff did not file a separate motion for summary judgment.  Even if Plaintiff's response constitutes a motion for summary judgment by Plaintiff, Plaintiff's motion would be denied for the reasons discussed herein that support granting Defendant's motion for summary judgment.

[4] Plaintiff alleges Defendant lacked probable cause only as to the criminal sexual conduct charge; Plaintiff does not challenge the validity of his arrest on the other two charges.  [*See* Doc. 1 at 4.]

56-18 ¶ 3; *see* Doc. 1 at 4.] Plaintiff's son provided a written statement that had been written and signed before he went to the police department. [Doc. 56-18 ¶ 4.] An investigator[5] reviewed the statement with Plaintiff's son, who confirmed the accuracy of the statement and verified his signature. [*Id.*]

On June 4, 2010, at a preliminary hearing on the three charges, Plaintiff was bound over on the child neglect charges, and the criminal sexual conduct charge was dismissed. [Doc. 1 at 4; Doc. 56-17 at 2.] On April 12, 2011,[6] Plaintiff was indicted on all three charges by the Greenville County grand jury. [Docs. 56-14, 56-15, 56-16.] The Court takes judicial notice that between June 21, 2011 and June 24, 2011, Plaintiff pled guilty to the two charges of unlawful neglect of a child and that the charge of third degree criminal sexual conduct was dismissed because there was insufficient evidence to convict.[7] Greenville County 13th Circuit Public Index, http://www.greenvillecounty.org/scjd/public index/SCJDPublicIndex23/PISearch.aspx?CourtType=G (last visited Oct. 31, 2011).

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574

---

[5] Detective Dale Arterburn began the investigation of the criminal sexual conduct charge when Plaintiff's son came to the Greer City Police Department. [Doc. 56-18 ¶ 3.] Approximately one month later, after learning Defendant was working on another case involving Plaintiff's son, Detective Arterburn turned the investigation over to Defendant. [*Id.* ¶ 7.] Detective Arterburn is not a party to this action.

[6] The Court notes Plaintiff was indicted on the charges after he filed his Complaint in this action.

[7] The Court notes neither Plaintiff nor Defendant has informed the Court of the disposition of the charges against Plaintiff that are relevant to this action.

3

F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the complainant's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly

be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must

demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendant argues she is entitled to qualified immunity because her conduct did not violate any clearly established rights of which a reasonable government official would have

known. [Doc. 56-1 at 7–8.] Specifically, Defendant contends a reasonable officer would have believed he had probable cause to secure the warrants leading to Plaintiff's arrest. [*See id.* at 8.] For the reasons explained below, the Court agrees Defendant is entitled to qualified immunity.[8]

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . .

---

[8] In his response in opposition to Defendant's motion for summary judgment, Plaintiff states that Defendant was acting in her official capacity when she committed the alleged violations of Plaintiff's rights. [*See, e.g.*, Doc. 85-1 at 2–3.] To the extent Plaintiff brings this suit against Defendant in her official capacity, Defendant is entitled to immunity pursuant to the Eleventh Amendment. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against Defendant in her official capacity, those claims must be dismissed because Defendant in her official capacity is entitled to immunity pursuant to the Eleventh Amendment.

whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

9

Here, Plaintiff alleges Defendant's actions constituted false arrest; section 1983 actions premised on an alleged false arrest are analyzed as actions claiming unlawful seizures in violation of the Fourth Amendment, *see, e.g.*, *Brown v. Gilmore*, 278 F.3d 362, 367–68 (4th Cir. 2002) (analyzing the plaintiff's allegations of false arrest as a claim of unreasonable seizure under the Fourth Amendment); *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001) (stating that claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment"). Accordingly, to determine whether Defendant is entitled to qualified immunity, the Court must determine whether Defendant acted with objective reasonableness in arresting—that is, seizing—Plaintiff pursuant to arrest warrants obtained on the basis of a statement from the alleged victim.

**The Fourth Amendment Standard: Probable Cause**

The Fourth Amendment proscribes "unreasonable searches and seizures."[9] U.S. Const. amend. IV. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (citation, quotation, and emphasis omitted). Seizures are "reasonable" only if based on probable cause. *Dunaway v. New York*, 442 U.S. 200, 214 (1979).

The test to determine whether probable cause existed for a seizure is an objective one, based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230–31

---

[9] The Fourth Amendment's proscriptions are applicable to the States through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961).

(1983); *see also Mazuz v. Maryland*, 442 F.3d 217, 224 (4th Cir. 2006) (citing *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985)) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken."). Specifically, the totality of the circumstances includes "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information," *Beck v. Ohio*, 379 U.S. 89, 96 (1964), and such facts and circumstances constitute probable cause if they are "sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense," *id.*

The Fourth Circuit has held "[i]t is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker" because "it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself." *Torchinsky*, 942 F.2d at 262; *see also United States v. Beckham*, 325 F. Supp. 2d 678, 687 (E.D. Va. 2004) ("Particularly relevant here is the principle that a finding of probable cause may be based on information provided by a victim or eyewitness to a crime, as 'it is well-established that [w]hen an officer has received . . . information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth, he has probable cause.'" (quoting *Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999))). Therefore, a victim's statement will constitute sufficient probable cause unless there is an apparent reason for the officer to

believe the victim is lying.[10]  *See Beckham*, 325 F. Supp. 2d at 687 (quoting *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999)).

Further, a warrant may issue only upon a finding of probable cause, *State v. Dupree,* 583 S.E.2d 437, 441 (S.C. Ct. App. 2003), which is usually established "upon affidavit sworn to before the magistrate . . . establishing the grounds for the warrant," S.C. Code Ann. § 17-13-140.  The affidavit must set forth sufficient facts and circumstances underlying the existence of probable cause to allow the magistrate to make an independent evaluation of the matter.[11]  *Franks v. Delaware*, 438 U.S. 154, 165 (1978); *see also*

---

[10] In *Torchinsky*, the Fourth Circuit disagreed with the plaintiffs that the defendant acted unreasonably by conducting an allegedly inadequate investigation and basing the arrest warrants on the victim's allegedly unreliable identification of the plaintiffs as the perpetrators of the crime. 942 F.2d at 262. The court explained,

> The [plaintiffs'] various contentions disregard the realities of police work that must inform qualified immunity analysis.  Criminal investigations are often conducted under trying conditions over which officers have limited control. Here, for example, there was only one witness to a brutal attack, the victim himself.  Ideally, of course, additional witnesses would have been available and the victim would not have been so brutalized.  In reality, however, the police were compelled to take the victim as they found him and do the best they could under the circumstances.

*Id.* at 263. As to the sufficiency of the defendant's investigation, the court discounted the plaintiffs' reliance on *Clipper v. Takoma Park*, 876 F.2d 17 (4th Cir.1989), stating, "In contrast to the officer in *Clipper*, [the defendant] did not ignore readily available exculpatory evidence of which he had been made aware." *Id.* at 264. Accordingly, the court held the defendant was entitled to qualified immunity. *Id.* at 264–65.

[11] In analyzing the qualified immunity issue in *Torchinsky*, the Fourth Circuit commented that it was "noteworthy that two different judicial officers in separate proceedings determined that [the defendant] had demonstrated probable cause to support the arrest of the [plaintiffs]." 942 F.2d at 261. With respect to the magistrate judge who signed the arrest warrants, the court stated,

> We encourage law enforcement officers to seek warrants because magistrates from their detached perspective serve as the essential "checkpoint between the Government and the citizen."  When a police officer protects a suspect's rights by obtaining a warrant from a neutral magistrate, the officer should, in turn, receive some protection from suit under 42 U.S.C. § 1983.  Otherwise, the threat of liability would force officers to continuously second-guess the considered decisions of magistrates. This in turn would promote delay in the execution of warrants, and alter the proper allocation of law enforcement functions.  In our view then, [the defendant's] actions in seeking the arrest warrants and the magistrate's determination of probable cause provide additional support for

12

*Dupree*, 583 S.E.2d at 441 ("The affidavit must contain sufficient underlying facts and information upon which the magistrate may make a determination of probable cause.").

Moreover, "'where the grand jury have returned a true bill upon the charge made, such finding amounts to a judicial recognition that probable cause does exist . . . ' and 'infers prima facie probable cause for the prosecution' . . . ." *White v. Coleman*, 277 F. Supp. 292, 297 (D.S.C. 1967) (quoting *Brown v. Griffin*, 25 S.C.L. (Chev.) 32, 33 (1839); *Fulmer v. Harmon*, 34 S.C.L. (3 Strob.) 576, 581 (1849)). "It reasonably cannot be doubted that, in the court to which the indictment is returned, the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Ex parte United States*, 287 U.S. 241, 250 (1932); *see also United States v. Soriano-Jarquin*, 492 F.3d 495, 502 (4th Cir. 2007) (noting probable cause may be satisfied by a grand jury indictment); *United States ex rel. Haim v. Mathues*, 19 F.2d 22, 23 (3d Cir. 1927) ("The indictment is itself evidence that there was probable cause . . . ."). Consequently, a grand jury indictment establishes probable cause for the indicted offense.

Finally, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31,

---

[the defendant's] claim that he acted with objective reasonableness.

*Id.* at 262 (internal citations omitted). However, the court also noted that "obtaining an arrest warrant does not provide per se evidence of objective reasonableness." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 345–46(1986)). "The presumption of reasonableness attached to obtaining a warrant can be rebutted where 'a reasonably well-trained officer in [the defendant's] position would have known that his [application] failed to establish probable cause and that he should not have applied for the warrant.'" *Id.* (second alteration in original) (quoting *Malley*, 475 U.S. at 345).

36 (1979). "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Accordingly, the probable cause standard is lower than the standard to convict—probable cause requires only "'a reasonable ground for belief of guilt,'" *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (quoting *McCarthy v. De Armit*, 99 Pa. 63, 69 (1881)), but to convict a defendant, the State must prove the defendant's guilt beyond a reasonable doubt, *see, e.g.*, *United States v. Booker*, 543 U.S. 220, 230 (2005) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). Thus, neither subsequently dropped charges nor an acquittal indicate a lack of probable cause for an arrest.

**Analysis**

As the Supreme Court has stated, "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 345–46 (1986) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)). Here, Defendant is entitled to qualified immunity because it was objectively reasonable for Defendant to conclude she had probable cause to obtain the warrants for Plaintiff's arrest, and the existence of probable cause was confirmed by a judicial officer and a grand jury indictment.

First, the record supports a finding of probable cause to obtain warrants for Plaintiff's arrest on the basis of the alleged victim's statement. Defendant asserts there was no reason to question the validity of the victim's statement. [Doc. 56-1 at 4–5; Doc. 56-18 ¶¶ 4–5.] Plaintiff contends, however, the victim "had a motive" and was "unreliable."

14

[Doc. 85-1 at 3–4]. Upon review of the pleadings, the Court finds Plaintiff has failed to submit any proof—affidavits, documents, etc.—that the victim's motive or unreliability should have been apparent to Defendant at the time the warrants were sought, and therefore, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant had reason to doubt the truthfulness of the alleged victim's statement. *See Beckham*, 325 F. Supp. 2d at 687 (citation omitted) (stating that a victim's statement will constitute sufficient probable cause unless there is an apparent reason for the officer to believe the victim is lying); *Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue); *Ross*, 759 F.2d at 365 (stating that conclusory allegations or denials, without more, are insufficient to preclude granting a summary judgment motion); Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . .").

Second, the record supports a finding of probable cause to obtain warrants for Plaintiff's arrest based on findings by a judicial officer and a grand jury. The warrants were presented to a Greer Municipal Court Judge, who issued the warrants. [Doc. 56-5 at ¶ 7]; *see Dupree,* 583 S.E.2d at 441 (stating a warrant may issue only upon a finding of probable cause). Moreover, a grand jury indicted Plaintiff on the same offenses for which

Defendant obtained the arrest warrants. [Docs. 56-14, 56-15, 56-16]; *see Soriano-Jarquin*, 492 F.3d at 502 (noting probable cause may be satisfied by a grand jury indictment); *Mathues*, 19 F.2d at 23 ("The indictment is itself evidence that there was probable cause . . . ."). Although Plaintiff was ultimately not convicted of, or did not plead to, the charge of third degree criminal sexual conduct, his non-conviction does not give rise to a cause of action under § 1983. *See Baker v. McCollan*, 443 U.S. at 145; *Michigan v. DeFillippo*, 443 U.S. at 36. Therefore, based on the facts and controlling case law, the Court holds it was objectively reasonable for Defendant to conclude she had probable cause to obtain the arrest warrants and arrest Plaintiff, and thus, Defendant is entitled to qualified immunity.[12]

---

[12] To the extent Plaintiff has stated a claim of defamation [*see* Doc. 1 at 2, 4], Defendant is also entitled to qualified immunity on that claim. Even if Defendant made defamatory statements regarding Plaintiff, it was objectively reasonable for Defendant to conclude she was privileged to make these statements to the judge who signed the arrest warrants. "In a defamation action, the defendant may assert the affirmative defense of conditional or qualified privilege. Under this defense, one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 134 (S.C. 1999) (citing Restatement (Second) of Torts, § 593 (1977)). To determine whether a communication was qualifiedly privileged,

> regard must be had to the occasion and to the relationship of the parties. When one has an interest in the subject matter of a communication, and the person (or persons) to whom it is made has a corresponding interest, every communication honestly made, in order to protect such common interest, is privileged by reason of the occasion. The statement, however, must be such as the occasion warrants, and must be made in good faith to protect the interests of the one who makes it and the persons to whom it is addressed.

*Bell v. Bank of Abbeville*, 38 S.E.2d 641, 643 (S.C. 1946) (citing *Smith v. Youmans*, 21 S.C.L. (3 Hill) 43 (1836); *Switzer v. Am. Ry. Express Co.*, 112 S.E. 110 (S.C. 1922); *Bosdell v. Dixie Stores Co.*, 167 S.E. 834 (S.C. 1933)). Plaintiff has failed to demonstrate that Defendant's statements do not fall within this privilege. Accordingly, to the extent Plaintiff has alleged a claim of defamation, the Court holds Defendant is entitled to qualified immunity as to that claim.

**CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment [Doc. 56] be GRANTED.

IT IS SO RECOMMENDED.

                                        s/Jacquelyn D. Austin
                                        United States Magistrate Judge

November 2, 2011
Greenville, South Carolina